# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RICHARD MERCER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:11CV02038 AGF |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Richard Mercer for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury convicted Petitioner of statutory rape in the second degree and incest. He was sentenced as a prior and persistent felony offender to consecutive terms of imprisonment of 15 years and 7 years, respectively. Petitioner raises 20 grounds for federal habeas relief, including that he was denied a fair trial due to certain comments by the State and rulings by the trial court concerning a Sexual Abuse Forensic Exam ("SAFE") report.

Respondent argues that habeas relief should be denied because many of Petitioner's claims were procedurally defaulted, and the state courts' adjudication of the remaining claims was factually and legally reasonable. For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

Petitioner was charged with the crimes of conviction on March 19, 2007. After several continuances, trial was set for March 26, 2008. Petitioner moved for a further

continuance on March 6, 2008, and again on March 20, 2008, claiming inadequate time to conduct depositions. Both motions were denied.

**<u>Trial</u>**

Petitioner's trial commenced on March 26, 2008. During voir dire, after a venireperson identified herself as a parole officer, the State asked if she had any contact with Petitioner, and received a negative response. (Resp. Ex. B at 57). Later, Juror 29 identified herself as a victim of a rape or other sex related crime when she was a child. She approached the bench and confirmed that she was a victim of a sexual assault. *Id.* at 65, 93. The trial court found that Juror 29 did not display emotional problems as a result of her personal experience and denied defense counsel's request to strike for cause. Defense counsel did not use a peremptory strike against her and she sat on Petitioner's jury.

During opening statement, the State stated that the jury would hear that a SAFE exam was performed more than two weeks after the rape and that there were no physical findings, such as DNA, scarring, or tearing, which was not unusual given the passage of time and age of the victim. *Id.* at 114. There was no objection by defense counsel.

The evidence at trial showed that the victim, who was born in June 1990, was the daughter of Shirley Mercer and Petitioner. In February 2007, Shirley Mercer, Petitioner, the victim (who was then approximately 16 and a half years old), and Shirley Mercer's son Justin (then age 8 approximately) were living together. Petitioner had recently moved back in with the family after being away for five years. At the time, Shirley Mercer worked a shift that began in the afternoon and ended at 11:00 p.m. On the

evening of February 25, 2007, while Shirley Mercer was at work and after Justin had gone to bed, the victim went into Petitioner's room where Petitioner was playing a video game on his computer. The victim lay down on Petitioner's bed where she fell asleep while Petitioner was on the computer.

At some point, the victim woke up to find that Petitioner had pulled her pants down and inserted his penis inside her and was having intercourse with her. When Shirley Mercer returned home that evening, she noticed that the bed that she and Petitioner shared had been messed up, which was unusual. Petitioner had not yet gone to bed. The victim was asleep on the couch. Petitioner told Shirley Mercer that their bed was messed up because he had taken a nap on the bed.

Prior to late February 2007, the victim had been "a tomboy," "very energetic," and "a really happy person," as described by Shirley Mercer. Shirley Mercer started noticing changes in the victim in March 2007—she was sad a lot, and eventually depressed and symptomatic to the point of needing to be hospitalized. After March 2007, the victim threw away all of her girl clothes and shopped strictly in the men's section at stores. *Id*. at 123-26.

Also in March 2007, the victim told her best friend, Amanda Hayes, that she had been molested by Petitioner, and sent Hayes some letters or notes regarding the molestation. The letters were introduced into evidence; they made reference to girlfriends that the victim had "dumped." *Id*. at 192. Hayes eventually convinced the victim to talk about the molestation with a counselor. Subsequently, detective Paul

3

Satterfield interviewed the victim and arranged for her to be interviewed by a forensic interviewer at the Child Advocacy Center, where the victim was given a SAFE exam.

During Hayes' testimony, the State asked her what the victim told her in early March 2007 that caused her concern. Defense counsel's hearsay objection was overruled, and Hayes testified "[t]hat her dad molested her." *Id*. at 136. The State asked if Hayes knew the reason why the victim did not immediately agree to get help and talk to a counselor, and Hayes answered "she was scared." Defense counsel's objection on the ground that the testimony was speculation was overruled. *Id*. at 139.

During cross-examination of the victim, defense counsel asked if she knew what the results of the SAFE exam were. The court sustained the State's objection on "best evidence" grounds. *Id*. at 163-64. When presenting Satterfield's testimony, the State offered the SAFE report into evidence. The trial court sustained Petitioner's hearsay objection. The State then asked Satterfield if there were any physical findings as a result of the SAFE exam. Petitioner objected again and the court sustained the objection. *Id*. at 170-73.

During closing argument, the State told the jury,

> "And the fact is, there was absolutely no evidence adduced during cross-examination, the defense presented no evidence to give you any possible reason, any possible reason this victim would lie about what happened to her. No contradictory evidence, not a single word contradicts the evidence of this victim."

*Id*. at 184.

Petitioner objected on the ground that the State was "dangerously close to commenting on [Petitioner's] failure to testify." *Id*. The trial court overruled the

4

objection, stating that the State was referring to defense counsel's cross-examination and had "probably taken it as far as [the court was] going to let him take it." *Id*. at 185.

The State later stated to the jury that the Petitioner "ought to be dating, going to parties, meeting young men . . . . Do you think she will ever be the same? Do you think she will ever have a normal sex life?" *Id*. at 187-88.

Additionally, the State argued during closing argument, "we could have thrown in a lot of – bring the SAFE exam, all that stuff. It doesn't mean anything because you can't prove anything by it." *Id*. at 199. Petitioner objected to "the reference to things that are not in evidence." *Id*. The trial court overruled the objection.

Petitioner moved for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. The trial court overruled both motions.

## **Direct Appeal**

Petitioner raised three arguments on direct appeal. He first argued that he was deprived of a fair trial as a result of (a) the State mentioning the SAFE exam in opening statement when the State knew the report would not be admissible because it was not authenticated, (b) the State successfully objecting when Petitioner was cross-examining the victim about the SAFE exam, and (c) the State later seeking to admit the SAFE report. Petitioner argued that the State's actions were all an attempt to have the jury infer that Petitioner was hiding something. Petitioner argued that the trial court erred in "overruling" his objections regarding the SAFE report (during Satterfield's testimony), and in failing to declare a mistrial sua sponte due to the cumulative prejudice to Petitioner. The appellate court noted that this claim included several different issues, and

5

that, in fact, the trial court had sustained Petitioner's two objections on this matter. The court held that Petitioner failed to show manifest injustice sufficient for a plain error claim that the trial court should have sua sponte declared a mistrial.

Petitioner's second argument on direct appeal was that the trial court abused its discretion in overruling Petitioner's objection to the State's closing argument about the SAFE exam, as the SAFE report had not been introduced into evidence. Petitioner argued that the comment was prejudicial because it implied that the SAFE exam result would have hurt Petitioner's case. The appellate court concluded that the State only made a passing reference to the SAFE exam, such that the trial court did not abuse its discretion in overruling Petitioner's objection, as there was no prejudice to Petitioner.

Petitioner's third argument was that the State improperly referred to Petitioner's failure to testify when the State told the jury that no contradictory evidence was presented, and the trial court abused its discretion in overruling Petitioner's objection. The appellate court "doubt[ed]" that the comments referred to Petitioner's failure to testify, and held that in any event, the trial court did not abuse its discretion in overruling Petitioner's objection. (Resp. Ex. G at 7.)

**State Post-Conviction Proceedings**

For state post-conviction relief, Petitioner asserted six claims of ineffective assistance of defense counsel, including (1) failure to call the victim's grandmother, Clara Mercer, to testify that she did not see any behavioral changes in the victim after the date of the incident and to provide an alibi for Petitioner; (2) objecting to the State's inquiry of Satterfield as to whether there were any physical findings identified by the SAFE exam as

6

the expected answer would have been that there were no physical findings; (3) failure to call Petitioner's brother, Russell Mercer to testify that at some point in the year prior to the crimes of conviction, the victim told him that Petitioner had sexually abused her, and recanted, saying she had lied because she was angry with Petitioner; (4) failure to question Shirley Mercer regarding a prior allegation by the victim of sexual abuse against Petitioner and subsequent recantation; (5) failure to present evidence that the victim considered herself to be a lesbian and she had dressed in a non-feminine manner well before the alleged sexual assault by Petitioner; and (6) failure to object and move for a mistrial when the State asked the venireperson who was a parole officer about prior contact with Petitioner, thereby inferring to the future jurors that Petitioner had previously been convicted and sent to prison.

An evidentiary hearing was held on the post-conviction motion on December 15, 2009. Three high school teachers testified to the victim's hair and dress in 2007 and 2008 and stated that they did not observe any change in her clothing or demeanor. (Resp. Ex. H at 10-13, 17-19, 25-26.) Colleen Mercer and Russell Mercer, Petitioner's sister-in-law and brother, who had lived with the victim's family in 2006, testified that they observed the victim interact with girls in a romantic nature in their shared house. *Id*. at 29, 38. Additionally, Russell Mercer testified that prior to February 2007 the victim had alleged that Petitioner fondled her and later recanted. *Id*. at 38-39. Clara Mercer, Petitioner's mother, testified that Petitioner was fixing a computer for her from 8:00 p.m. to 11:00 p.m. on February 25, 2007. Shirley Mercer testified, acknowledging that the victim had been openly lesbian for the past three years. *Id*. at 53.

Defense counsel testified that she did not present evidence of the victim's homosexuality to counter the State's argument that the victim ought to be dating and meeting young men, because the victim's letters to Hayes that were introduced into evidence referenced the victim as a lesbian. *Id*. at 67. With regard to not objecting to the State asking the venireperson who was a parole officer about any prior contact with Petitioner, Defense counsel testified that she did not interpret the exchange as suggesting that Petitioner had been incarcerated. *Id*. at 71. Defense counsel testified that she objected to the State's question to Satterfield regarding the SAFE exam because she did not want to open the door to the introduction of the report. *Id*. at 72-73. She did not explain further.

The motion court found that defense counsel's articulated reasons for all of the actions or failures to act asserted by Petitioner as constituting ineffective assistance of counsel were reasonable trial strategy. The court found defense counsel's testimony in this regard credible. Specifically, the motion court concluded from observation during the course of the motion hearing and the record that (1) Clara Mercer's alibi testimony was not credible; (2) introduction of a portion of the SAFE report might have led to the introduction of other portions; (3) Russell Mercer's testimony was not credible; (4) Shirley Mercer would have been a witness that would have been extremely hostile to the defense at trial; (5) attempts to besmirch a victim's character by showing her sexual orientation could have resulted in increased jury sympathy for the victim; and (6) an objection or additional questioning of the venireperson at issue, or the offering of a cautionary instruction, would have only served to highlight it for the jury; and a motion

8

for a mistrial would have been unlikely to have succeeded. In sum, the court found that Petitioner failed to meet the burden of proving his allegations by a preponderance of the evidence, and there was no reasonable probability that had counsel performed as Petitioner suggested, the outcome of the case would have been different. (Resp. Ex. J at 2-4.)

On appeal from the denial of post-conviction relief, Petitioner reasserted only his claim that trial counsel was ineffective for objecting to the State's inquiry of Satterfield as to whether there were any physical findings identified in the SAFE exam. Petitioner alleged that counsel's decision to object was not based upon reasonable trial strategy since counsel erroneously believed that if she failed to object to the State's question, the entire SAFE exam would be admitted.

The state appellate court held that the motion court did not err in finding that defense counsel acted within the bounds of reasonable trial strategy. The appellate court held that there was no evidence before the motion court that Satterfield would have testified that there were no physical findings revealed by the SAFE report, Satterfield was not called by Petitioner to testify at the evidentiary hearing, and there was no evidence as to what Satterfield would have said had he been allowed to answer. As a result, Petitioner failed to prove that the excluded answer "could have, or would have, changed the outcome of the trial." (Resp. Ex. M at 5-6.)

On December 1, 2011, Petitioner filed a petition for state habeas corpus relief, under Missouri Supreme Court Rule 91.01, alleging judicial misconduct as the trial judge also served as the judge in the family court dealing with this same matter. Petitioner

9

further alleged prosecutorial, police, defense counsel, and appellate counsel misconduct, including suppressing and withholding evidence and witness testimony, refusing to call favorable witnesses, misleading the jury with erroneous objections during trial, refusing to raise reversible claims and conspiring to obtain a conviction and denial of Petitioner's two state appeals. Additionally, Petitioner alleged that he was actually innocent and but for the State's misconduct, no reasonable juror would have voted to convict him. The Court takes judicial notice that the petition was dismissed by the state court without prejudice on June 13, 2012. (https://www.courts.mo.gov/casenet, Case No. 11WA-CC00474.)

For federal habeas relief, Petitioner claims that his federal constitutional rights were violated in the following ways:

(1) The trial court erred in overruling Petitioner's motion for a continuance filed on March 6, 2008;

(2) The trial court erred in overruling Petitioner's motion for a continuance filed on March 19, 2008;

(3) The trial court erred in finding Petitioner was a prior and persistent offender;

(4) The trial court erred in overruling Petitioner's strike for cause of Juror 29;

(5) The trial court erred in overruling Petitioner's objection to the State's question to Hayes calling for the hearsay statement of the victim that Petitioner had molested her;

(6) The trial court erred in overruling Petitioner's objection to the State's question to Hayes calling for her speculation regarding the victim's state of mind;

(7) The trial court erred in "overruling [Petitioner's] objection to the State's attempt to introduce [the SAFE report] . . . and [Petitioner's] objection to it (which was sustained by the court in the presence of the jury)"; and the attempt to introduce the report "was prejudicial to [Petitioner] because it caused

[Petitioner] to object to the introduction and created the impression to the jury that [Petitioner] was hiding evidence from them";

(8) The trial court erred in overruling Petitioner's motion for judgment of acquittal at the close of the State's evidence;

(9) The trial court erred in overruling Petitioner's motion for judgment of acquittal at the close of all the evidence;

(10) The trial court erred in giving a verdict director for statutory rape (as there was insufficient evidence to support that charge);

(11) The trial court erred in giving a verdict director for incest (as there was insufficient evidence to support that charge);

(12) The trial court erred in overruling Petitioner's objection to the State's closing argument that commented on the Petitioner's right not to testify;

(13) The trial court erred in overruling Petitioner's objection to the State's closing argument regarding the SAFE exam;

(14) Trial counsel was ineffective for failure to call the victim's grandmother, Clara Mercer, to testify on Petitioner's behalf at trial;

(15) Trial counsel was ineffective for objecting to the State's inquiry of Satterfield as to whether there were any physical findings identified in the SAFE report;

(16) Trial counsel was ineffective for failing to call Russell Mercer to testify to the victim's prior allegation against Petitioner and subsequent recantation;

(17) Trial counsel was ineffective for failing to call Shirley Mercer to testify to the victim's prior allegation against Petitioner and subsequent recantation;

(18) Trial counsel was ineffective for failing to counter the State's inferences of sexual assault from the victim's behavior changes, by arguing that the victim's behavior had not changed;

(19) Trial counsel was ineffective for failing to object and move for mistrial during voir dire when the state inferred to potential jurors that Petitioner had previously been convicted and sent to prison;

(20) Petitioner is actually innocent of the crimes charged, and the State conspired with the trial judge and "trial counsel" to convict Petitioner.

Respondent argues that only Grounds 7, 12, 13, and 15 were properly presented to the state courts, and so the remaining 16 grounds are procedurally barred. Additionally, Ground 7 was raised as plain error on direct appeal, and so review of the state court's adjudication of that ground is also barred, or very limited. Respondent argues that the state courts' adjudication of the preserved grounds was reasonable.

In his traverse, Petitioner states that his trial counsel, appellate counsel, and post conviction counsel "all failed in asserting merited claims on their level of representing the petitioner on several different stages of his appeal and post-conviction process before the state court," and that such ineffective assistance serves as cause to cure the procedural defaults.

## **DISCUSSION**

**Procedural Default**

"Ordinarily, a federal court reviewing a state conviction in a federal habeas corpus proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). For Missouri prisoners, claims that could have been but were not raised on direct appeal or on appeal from the denial of a post-conviction motion are procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149-50 (8th Cir. 1997); *Moore-El v. Luebbers*, 446 F.3d 890, 897-98 (8th Cir. 2006). Where a claim is defaulted, a federal habeas court will consider it only where the petitioner can establish either cause for the default and actual prejudice, or that the failure to consider

the claim will result in a fundamental miscarriage of justice in that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Skillicorn v. Luebbers*, 475 F.3d 965, 967-77 (8th Cir. 2005) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87(1977)).

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Court held that ineffective assistance of post-conviction counsel does not provide cause to excuse a procedural default. *Id*. at 757. In *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), the Court created a "narrow exception" to the *Coleman* rule as follows:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S.Ct. at 1320. The exception "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Id*.[1] In an analogous situation, the Eighth Circuit has expressly declined to expand the "narrow" *Martinez* exception. *See Dansby v. Hobbs*, 691 F.3d 934, 937 (8th Cir. 2012).

Here, the Court concludes that Petitioner's claims 1 through 6 and 8 through 11—all of which allege errors by the trial court— were procedurally defaulted in state court because they should have been, but were not, raised on direct appeal. Ineffective

---

[1] The Supreme Court expanded the *Martinez* exception in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), to apply where state law does not require that an ineffective assistance of trial counsel claim be raised in an initial collateral review proceeding, but allows such a claim to be raised on direct appeal. *Id*. at 1921.

assistance of direct appeal counsel can constitute cause for this procedural default, but only when the claim of ineffective assistance of direct appeal counsel has been itself presented to the state courts as an independent claim. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986); *Clemons v. Luebbers*, 381 F.3d 744, 752 (8th Cir. 2004). Under Missouri Supreme Court Rule 24.035, a motion for post-conviction relief is the exclusive procedure for presenting to the state court a claim of ineffective assistance of appellate counsel. Here Petitioner failed to follow this procedure, and the filing of a state habeas petition did not remedy the default. *See Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010); *Rice v. Wallace*, No. 4:11CV00319 SNLJ, 2014 WL 752529, at *29 (E.D. Mo. Feb. 25, 2014). The default of an ineffective-assistance-of-direct-appeal-counsel claim cannot be excused by arguing that post-conviction counsel was ineffective for not raising the claim as that would improperly expand the holding of *Martinez*.

Petitioner's claims 14 and 16 through 19 were also procedurally defaulted because these claims were raised in the post-conviction motion but not on appeal from the denial of the motion, and ineffective assistance of appellate post-conviction counsel does not constitute cause to cure this procedural default. *See Martinez*, 132 S. Ct. at 1317, 1320.

Petitioner does not meet the standard for showing a miscarriage of justice for any of the above defaulted claims with his conclusory allegation that he is actually innocent. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1936 (2013) (holding that the actual innocence "gateway" to reach the merits of a procedurally barred claim only applies when a petitioner presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was

free of nonharmless constitutional error"); *House v. Bell*, 547 U.S. 518, 537 (2006) (holding that a claim of actual innocence as a gateway to defaulted claims must be supported by new and reliable evidence).[2] As a result, this Court is barred from considering the merits of claims 1 through 6, 8 through 11, 14, and 16 through 19.

The Court will turn to consider the merits of Petitioner's claims that are not barred – claims 7, 12, 13, and 15.

**Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective death Penalty Act ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *White v. Woodall*, 134 S. Ct. 1697, 1705(2014); *Strong v. Roper*, 737

---

[2] The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggen,* 133 S.Ct. at 1931. The threshold for any such claim, if it were recognized, would be "extraordinarily high," and would require "more convincing proof" than the "gateway" standard. *House,* 547 U.S. at 555. Here, Petitioner falls short of this standard.

15

F.3d 506, 510 (8th Cir. 2013). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Additionally,

> A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

*Price v. Vincent*, 538 U.S. at 641 (internal quotations and citations omitted).

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner "has the burden of rebutting this presumption of correctness by clear and convincing evidence." *Id*. § 2254(e)(1); *see also Grass v. Reitz*, 749 F.3d 738, 743 (8th Cir. 2014).

**State's Comments Related to Petitioner's Right Not to Testify (Claim 12)**

A criminal defendant's Fifth Amendment right against compulsory self-incrimination forbids a prosecutor from commenting on an accused's failure to testify. *Griffin v. California*, 380 U.S. 609, 615 (1965). Indirect comments violate the Constitution "if they manifest the prosecutor's intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify." *Robinson v. Crist*, 278 F.3d 862, 866 (8th Cir. 2002). Here, the State's indirect comment that no contradictory evidence was presented did not rise to the level of a constitutional violation. *See United States v. Gardner*, 396 F.3d 987, 991 (8th Cir. 2005) (holding that the prosecutor's statement during rebuttal closing

16

argument, that "there is no evidence that refutes" a government witness' testimony was not improper; in general, the government is permitted to "comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence"); *United States v. Emmert,* 9 F.3d 699, 702 (8th Cir.1993) (holding that the prosecutor did not improperly comment on the defendant's failure to testify by stating during rebuttal summation that there was "no evidence," "no testimony," and "no explanation" to counter the government's theory). Thus, the state appellate court's adjudication of this claim was factually and legally reasonable.

**<u>Assistance of Defense Counsel (Claim 15)</u>**

Petitioner alleges that defense counsel was ineffective for objecting to the State's inquiry of Satterfield regarding physical findings of the SAFE exam. Petitioner asserts that counsel should have permitted Satterfield to answer the question, as the answer would have benefited Petitioner. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As the Eighth Circuit recently explained:

> The first prong requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The second prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*White v. Dingle*, 757 F.3d 750, 752-53 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 694). There is a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Tunstall v. Hopkins*, 306 F.3d 601, 606

(8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

The state courts' adjudication of this claim is somewhat flawed. Defense counsel did not explain why she would not want the entire SAFE report introduced. Thus this Court sees no basis for the finding that her objecting to the question at issue posed to Satterfield was reasonable trial strategy. Furthermore, the state appellate court's reasoning that Satterfield's potential answer was unknown appears unfounded in light of the undisputed fact that the SAFE report showed no physical findings. Nevertheless, Petitioner is not entitled to habeas relief on this claim because, as the state appellate court held, there is no reasonable probability that but for counsel's objection, the result of the trial would have been different. The Court notes that the State commented in opening statement that there were no physical findings from the SAFE exam. Although this was not evidence, the jury heard the comment.

**Trial Court's Rulings with Respect to the SAFE Report (Claims 13 and 7)**

Claim 13 is based on the trial court's overruling Petitioner's objection to the State's reference to the SAFE exam during closing argument. This Court concludes that the Missouri Court of Appeals reasonably held that there was no prejudice to Petitioner as the reference in question was merely a "passing" reference. Claim 7 is based on the trial court's rulings on the SAFE report during Satterfield's direct testimony (sustaining Petitioner's objections to introduction of the report and to the question about the report), and on the State's attempt to introduce the report. On this claim, the Missouri Court of Appeals' analysis is factually and legally reasonable. The state court recognized the multi-faceted nature of these claims and dealt with all aspects. None of the claimed

18

errors rise to the level of a federal constitutional violation.  The SAFE report was not a focus of the trial and the result of the trial would not have been different even absent all the alleged errors raised by Petitioner.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of Petitioner's claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2).  *See Miller-El v. Cockrell*, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Richard Mercer for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 18th day of December, 2014.